UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:18-cv-81352-KAM

BLACKSTONE LABS LLC,
    Petitioner,

v.

UNITED STATES OF
AMERICA, et. al.,
    Respondents.
_____/

**RESPONSE IN OPPOSITION TO GOVERNMENT'S SEALED MOTION TO DECLINE JURISDICTION OR FOR 90-DAY EXTENSION**

Blackstone Labs, LLC ("Blackstone Labs") opposes the government's motion to decline jurisdiction. The government has neither offered a valid justification for its continued seizure of commercial property and money nor demonstrated that the continued seizure for twenty months[1] without initiating forfeiture proceedings is reasonable. Indeed, the government concedes that Blackstone Labs is entitled to a review and duplication of seized paper and electronic records. The

---

[1] Although not applicable to seizures by search warrant, the Civil Asset Forfeiture Reform Act's requirement that the government initiate forfeiture proceedings within ninety days of seizing an asset illustrates the unreasonableness of the government's current twenty-plus month seizure of Blackstone Labs' property. 18 U.S.C § 983.

government also has not disagreed that some of the items in its possession are not the subject of any investigation or claim of forfeiture. This Court should deny the motion and order the government to return Petitioner's property.

## I. FACTUAL BACKGROUND

### A. The Government Has Not Fully Communicated The Status Of The Seized Property.

1) Blackstone distributes nutritional supplements for primary use by the athletic community. Its products are widely distributed and used by many sophisticated and health-conscious consumers. Blackstone has developed an enviable reputation as a distributor of nutritional performance products that are in demand by domestic and foreign purchasers.

2) Despite numerous efforts by Blackstone to obtain the return of its products, or any portion of its inventory, the government has refused to discuss in good faith the status of the seized products. The government refuses to disclose the conditions of their storage, or even whether the nutraceuticals are being maintained in climate controlled warehouses. Blackstone has been given no information whatsoever that its inventory, once valued at hundreds of thousands of dollars, has any

value today. Without government confirmation of the conditions of its storage, the entire inventory may be worthless because it is no longer commercially usable. Thus, the government's continued unexplained seizure may have already resulted in the complete destruction of Blackstone's once-valued inventory.

3) The government articulation of the August 8, 2018 conference is deficient on significant points, in that it suggests there was a full and complete discussion on the status of the seized products. For example, the government did claim that certain of the seized products were adulterated or misbranded, but it did so only in general terms. It did not identify the specific products. In fact, the government flatly refused to identify what it claims to be the adulterated or misbranded products.

4) The government similarly stated in the conference that it believed certain products contained banned substances. But again, it never identified the specific products or otherwise claimed that the products were different from the products it claimed fit within the alleged "adulterated or misbranded" category. For this category of products, the government again refused to identify the particular products at issue.

5) Third, the government contention in conference that certain

products were the proceeds of smuggling was unclear then and remains unclear now. Not only has the government never identified the specific products, but it has failed to address the threshold question—how can a waiting-to-be-sold product be the proceeds of smuggling?

6) The government finally contended in the conference that certain products were manufactured at facilities that did not follow current Good Manufacturing Processes (cGNP), but it did not identify any particular product or manufacturer. Still, this latter claim was particularly perplexing. Blackstone Labs is not a manufacturer; it did not manufacture the products; and the government has not identified any adverse actions taken against the manufacturer. Furthermore, non-compliance with federal cGNPs would not exclude foreign export of those same products. It is undisputed that Blackstone Labs sells internationally.[2]

### B.   Blackstone Labs Did Not Delay The Investigation.

7) The government fails to accept the consequences of its

---

[2] Moreover, to the extent the government believed the manufacturer's processes did not confirm with federal regulations, Blackstone Labs should be informed so that it can take proper remedial actions before the expiration of any statute of limitations.

decision to seize the entirety of Blackstone Labs' bank account. While cleaning out Blackstone's bank account, the government simultaneously served a subpoena requesting hundreds of thousands of documents and records. For example, it identified twenty-one individuals and requested the production of various emails from each account. Its subpoena further included an extensive list of terms. With zero funds to employ the assistance of a document review service to electronically process the subpoena, Blackstone Labs undertook a manual production of responsive documents using its internal employee resources. The government opposed the manual production, but it never agreed or offered to pay the costs for an electronic review and production.

8) The government complaint is simply perplexing. The government cannot protest the manual production of a massive amount of documents when it created the circumstances that prevented Blackstone Labs from being able to finance an electronic review and production. To be sure, upon scraping together sufficient resources to employ outside assistance, Blackstone Labs promptly hired an outside agency to produce the documents in a manner consistent with the government's production specifications. That production nearly

obliterated Blackstone's financial resources.

9) Furthermore, the government does not give a complete picture concerning PJ Braun's email account (Motion 7). Blackstone Labs produced all responsive emails on its server. Once it was brought to Blackstone Labs' attention that there were responsive emails not part of the Blackstone Labs' server and therefore not in Blackstone Labs' custody, Blackstone Labs promptly secured the documents from the third-party repository and made ESI-compliant productions in November and December 2017.

### C. Seized Funds.

10) The government has not asserted any semblance of a claim for all the money or otherwise argued that all the money in its possession is forfeitable.

## II. ARGUMENT

11) The government has detained several million in Blackstone Labs' nutritional supplements for more than twenty months. Because the government has failed to show that its seizure of Blackstone Labs' inventory of products is substantially justified, prejudice is presumed. Because the "mere absence of prejudice does not make the government's position substantially justified," the "possible absence of [demonstrable]

prejudice is not conclusive." *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1519 (9th Cir. 1991). "[P]rejudice to the defendant can be presumed where he is deprived of the use of his property by the government without justifiable cause . . . ." *United States v. Sharp*, 655 F. Supp. 1348, 1352 (W.D. Mo. 1987). That is so because the government's unjustified seizure violates Blackstone's most basic due-process rights to the possession of property. *See* Const. Amend. V; *Robinson*, 734 F.2d at 738.

12) The Court should closely scrutinize the government articulation of the applicable standard of review. For example, the government misquotes *Bennett v. United States,* 12-61499-CIV, 2013 WL 3821625, at *12 (S.D. Fla. July 23, 2013), to suggest there is a higher standard for pre-indictment motions for the return of property. It writes: "Even further caution is warranted 'at the pre-indictment stage, where it is necessary to consider what interruption, if any, such an exercise of jurisdiction would play on any ongoing investigation and proceedings." (Motion 8-9 (quoting *Bennett*)). The district court in *Bennett* made no such contention that further caution is required:

> Equitable jurisdiction is deemed to be 'extraordinary' and, thus, should not be exercised in every situation as to make

such a jurisdiction ordinary. This is especially so at the pre-indictment stage, where it is necessary to consider what interruption, if any, such an exercise would play on any ongoing investigations and proceedings.

This does not heighten the burden of proof or impose "even further caution" as the government suggests.

### A. The Government Misstates The Legal Doctrine Of Clean Hands. Still, There Was No Delay.

13) The government's clean hands argument is wrong. First, it erroneously places the burden on Blackstone Labs to establish lack of clean hands. "To sustain the defense of unclean hands, [the] defendant must show that plaintiff engaged in inequitable conduct or bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks." *Museum of Modern Art v. MOMACHA IP LLC, 18 CIV. 3364 (LLS),* 2018 WL 5019753 (S.D. N.Y. Sept. 28, 2018). *United States v. Howell,* 425 F.3d 971, 974 (11th Cir. 2005), proffered by the government, places no such burden on the person seeking the return of property to prove a negative, the absence of unclean hands. The *Nnadi v. Richter,* 976 F.2d 682, 687 (11th Cir. 1992), factors are sufficient in themselves to protect the government interesdocument t, and the Court should guard against the government's continued attempts to further increase Blackstone Labs' burden of proof.

14) Second, and more fundamentally, the contention that a delay in production could be evidence of unclean hands distorts the Supreme Court's application of the doctrine in *Henderson v. United States*, 135 S. Ct. 1780, 1783 n.1 (2015). In *Henderson,* the Court explained that "The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has 'immediate and necessary relation to the equity that he seeks.'" *Id.* (quoting *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933)). The Court's provided example leaves no doubt as to the government's misapplication of and miscitation to *Henderson*, *id.*:

> The doctrine might apply, for example, if a felon requests the return or transfer of property used in furtherance of his offense. See, *e.g., United States v. Kaczynski,* 551 F.3d 1120, 1129–1130 (9th Cir. 2009) (holding that the Unabomber had unclean hands to request the return of bomb-making materials). But Henderson's felony conviction had nothing to do with his firearms, so the unclean hands rule has no role to play here.

15) In this case, Blackstone Labs' reasonable and timely compliance with the government's subpoena requests is not the subject of an unclean hands analysis.

16) Finally, Blackstone Labs did not unreasonably delay its response to the government's subpoena. At all times, Blackstone Labs

timely tendered responses to the best of its ability.

### B.   The Government Misapplies The *Richter* Factors.

17)   The government analysis of the *Richter* factors is misplaced. 976 F.2d 682. For example, the government proffers *Bennett,* 12-61499-CIV, 2013 WL 3821625, at *12, in support of its claim that there has been no violation of or disregard of Blackstone Labs' constitutional rights (Motion 13). It cites *Bennett* as an example in which a court in this district approved a two-year possession of seized medical documents, contrasting that case to this case, where only twenty-one months have elapsed since the government seizure. The government argument fails to disclose the unique facts of *Bennett*. In *Bennett*, the district court relied on the fact that each individual file needed to be evaluated by a person with specialized medical knowledge:

> Given the volume of medical documents seized from the Gulfstream Pain Center, the need for each patient's file to be reviewed and evaluated by a person with specialized medical knowledge, and the fact that the Government has agreed to allow Dr. Bennett access to the files, the Government's conduct—and specifically, the delay—does not evidence callous disregard for Dr. Bennett's constitutional rights.

*Id*. at *14. This case is a far cry from *Bennett* and is not that complex. To be sure, the government rightfully has not claimed that it needs to test each individual package to determine if the seized products violate

federal law. It has had more than enough time to collect and test samples of the products seized.

19) 18) Regarding the government argument on Blackstone Labs' need for its seized product, the government mispresents *Matter of Search of Specialty Fulfillment Ctr.*, 1:17-MC-09979-CWD, 2018 WL 785861 (D. Idaho Feb. 8, 2018). The government cites the decision as "concluding that where a Rule 41(g) movant's only interest was an economic interest in selling the seized supplement products, the court should not exercise equitable jurisdiction." The court made no such conclusion. The movant's economic interest was but one of many facts considered by the court in addressing whether the movant had an individual interest in and need for the seized property. *See Specialty Fulfillment Ctr.*, 2018 WL 785861, at *6.

19) For example, the court also considered the fact that the expiration date on many of the items had already passed, which barred the sale of the claimant's property anyway. *Id*. It also considered the fact that the products were highly material to the government and were a large part of the ongoing investigation. Still, after reviewing the facts, the Court did not conclude these facts counseled it to not exercise

equitable jurisdiction, as the government contends. The district court merely concluded that these facts supported a conclusion that the second *Richter* factor "weigh[ed] against exercising equitable jurisdiction." *Id.* at *6. In this case, the seized products should be quickly returned to Blackstone Labs *before* they do expiree.

20) The government cannot escape the consequences of the fact that it cannot and has not claimed that every product in its custody is forfeitable. Unlike much of the property in the cases the government cites, the property here has a limited shelf-life; it loses its potency over time and eventually expires. The government's retention of the products threatens Blackstone Labs' ability to offset any economic harm caused by the government's seizure. Among the circumstance is the difference between a deteriorating asset like the property at issue in this case and currency. Currency is not a deteriorating asset; rather it is a fungible asset that can be easily returned with interest if the government is found to have seized the property in error.

### C. The Government Does Not Need 90-Days To Identify Products It Does Not Claim Has Been The Subject Of Its Investigation.

21) The government alternatively requests 90 days to file an

answer detailing the products it believes fit within its four categories. The government should timely release those products it has already determined or does not otherwise contend fit within its four categories. Furthermore, lawful products that were not manufactured in compliance with federal cGMP should be released for sale in Blackstone Labs' international sales department.

### III. CONCLUSION

22) The Court should deny the government motion and order the return of items not the subject of the government's investigation. Similarly, the products the government only contends were manufactured not in compliance with federal cGMP should be released for sale in Blackstone Labs' international sales department. Otherwise, the government should promptly file a response to the petition, no more than 30 days from today.

Respectfully submitted,

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154

Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

## CERTIFICATE OF SERVICE

I CERTIFY that on December 21, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**